# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

THOMAS SILLER, et al.,        )    CASE NO. 1:13-cv-00594

               )

        Plaintiffs.      )    JUDGE JAMES S. GWIN

               )

vs.                     )

               )

JOSEPH SEROWIK, et al.,     )

               )

        Defendants.     )

               )

## DEFENDANT JOSEPH SEROWIK'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Joseph Serowik hereby moves for summary judgment on all claims in the Plaintiffs' Complaint. A Memorandum is attached hereto for the Court's review, along with all of the deposition transcripts, declarations, affidavits, exhibits, and other evidence relied upon to support the Motion.

Respectfully submitted,

*/s/ Stephen W. Funk* _____
Stephen W. Funk (0058506)
222 South Main Street, Suite 400
Akron, OH 44308
Tel: (330) 849.6602    Fax (330) 376.4577
Email: sfunk@ralaw.com

Amanda M. Knapp (0081948)
1375 East Ninth Street
One Cleveland Center, 9th Floor
Cleveland, OH 44114
Tel: (216) 615.7416    Fax: (216) 623.0134
Email: aknapp@ralaw.com

*Attorneys for Defendant Joseph Serowik*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INDEX OF EXHIBITS ........................................................................................................... vi

SUMMARY OF ARGUMENT ................................................................................................ 1

STATEMENT OF THE ISSUES ............................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

      A.     The City Of Cleveland Police Forensic Laboratory's 1997 Report ........................... 2

      B.     Serowik's Testimony At The 1998 Trial .................................................................. 4

      C.     Serowik's Testimony At The 2001 Trial .................................................................. 5

      D.     The 2011 Plea Agreements Of Siller And Zimmer ................................................. 6

ARGUMENT ......................................................................................................................... 7

I.     JOSEPH SEROWIK IS ENTITLED TO QUALIFIED IMMUNITY AND
      SUMMARY JUDGMENT FOR PLAINTIFF'S SECTION 1983 CLAIMS ........................ 7

      A.     Serowik Is Entitled To Qualified Immunity On Count 1 Of The Complaint ........... 8

            1.     Plaintiffs Cannot Demonstrate That Serowik Knowingly And In Bad
                 Faith Falsified Or Fabricated Any Evidence .................................................. 8

            2.     Serowik Is Entitled To Qualified Immunity Because No Reasonable
                 Official Would Have Clearly Known That He Had A Constitutional
                 Duty To Include Additional Information In The Lab Report ......................... 9

      B.     Serowik Is Entitled To Qualified Immunity On Count 2 Of The Complaint ........... 10

            1.     Plaintiffs Cannot Demonstrate That Serowik Suppressed Or Withheld
                 Exculpatory Evidence From The Prosecutor In Violation Of *Brady* ............. 10

            2.     Plaintiffs Cannot Show That It Was Clearly Established A Forensic
                 Criminal Laboratory Had An Affirmative Duty Under *Brady* To
                 Produce Their Underlying Laboratory Notes .................................................. 12

      C.     Serowik Is Entitled To Qualified Immunity On Count 5 Of The Complaint ........... 13

      1.     Serowik Did Not Make, Influence, Or Participate In The Decision To Prosecute Siller And Zimmer ........................................................................ 14

      2.     Plaintiffs Cannot Establish A Lack Of Probable Cause ................................ 14

      3.     Plaintiffs Cannot Establish The Criminal Proceedings Terminated In Their Favor ...................................................................................................... 16

II.     JOSEPH SEROWIK IS ENTITLED TO SUMMARY JUDGMENT AND IMMUNITY ON PLAINTIFFS' STATE LAW CLAIMS ..................................................... 17

    A.     Plaintiffs' State Law Tort Claims Are Barred By The Statute Of Limitations .......... 17

    B.     Plaintiffs Cannot Establish The Elements Of A Malicious Prosecution Claim ......... 18

    C.     Plaintiffs Cannot Establish The Elements Of An Intentional Infliction Of Emotional Distress Claim Under Ohio Law ................................................................. 19

    D.     Serowik Is Entitled To Immunity Under Ohio Rev. Code 2744.03(A)(6) ................. 20

CONCLUSION ................................................................................................................................ 20

CERTIFICATE OF COMPLIANCE ............................................................................................... 21

CERTIFICATE OF SERVICE ......................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) .............................10

*Ash v. Ash*, 72 Ohio St.3d 520, 651 N.E.2d 945 (1995)............................................................ 16, 19

*Ayers v. City of Cleveland*, 2013 WL 775359 (N.D. Ohio Feb. 25, 2013) ............................. 15, 18

*Barnes v. City of Toledo*, No. 3:08-CV-2090, 2010 WL 1268044 (N.D. Ohio 2010) ..................19

*Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006) ..........................................................................15

*Barstow v. Waller*, 4th Dist. No. 04CA5, 2004-Ohio-5746, 2004 WL 2427396 ...........................19

*Buckman-Peirson v. Brannon*, 159 Ohio App.3d 12, 822 N.E.2d 830 (2004) ...............................19

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) ........................................................20

*Crist v. Pugin*, No. 3:08-CV-501, 2008 WL 2571229 (N.D. Ohio June 25, 2008) ......................17

*D'Ambrosio v. Marino*, No. 1:11-cv-933, 2012 U.S. Dist. LEXIS 141516,
     2012 WL 4504523 (N.D. Ohio Oct. 1, 2012) ...............................................................13

*Douglas v. Swing*, No. 1:10-cv-14, 2011 WL 3497292 (S.D. Ohio Aug. 10, 2011).....................19

*Durham v. McElynn*, 254 Fed.Appx. 892 (3d Cir. 2007)..................................................................9

*France v. Lucas*, No. 1:07-CV-3519, 2012 WL 5207555 (N.D. Ohio Oct. 22, 2012) .................14

*Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161,
     871 N.E.2d 1159 .......................................................................................................18

*Gregory v. City of Louisville,* 444 F.3d 725 (6th Cir. 2006)...........................................................13

*Jones v. Swank*, 2:11-cv-797, 2012 WL 4107981 (S.D. Ohio Sept. 19, 2012) .............................17

*Lee v. Lucas*, No. 1:10-cv-00151, 2011 WL 5361509, at *4 (N.D. Ohio Oct. 31, 2011) ...... 17, 18

*LeFever v. Ferguson*, Nos. 2:11-cv-935, 2:12-cv-664, 2013 WL 3742530 (S.D. Ohio
     July 15, 2013).............................................................................................................13

*Martin v. Insight Communications Co., LP*, Case No. 2:10-cv-00537, 2011 WL 1233401
     (S.D. Ohio 2011) ................................................................................................... 18, 19

*McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2007) ..........................................................14

*Mechler, D.C. v. R.W. Hodges*, No. C-1-02-942, 2006 WL 2927253 (S.D. Ohio 2006)...............16

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009)........................................................8, 13

*Mott v. Mayer*, No. 11-3853, 11-3855, 11-3996, 2013 WL 1663219 (6th Cir. Apr. 17, 2013)......15

*O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505...............................20

*Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983) ........................................................19

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ................................7

*Riechle v. Howard*, ___ U.S. ___, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) .............................7, 8

*Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433 (6th Cir. Aug. 26, 2011) .........................8, 15

*Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ................................................7

*Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir. 2002) ....................................................14

*Spirko v. Mitchell*, 368 F.3d 603 (6th Cir. 2004)........................................................................11

*State of Ohio v. Siller*, 8th Dist. No. 75138, 1999 WL 980405  .................................................2, 16

*State of Ohio v. Siller*, 8th Dist. No. 80219, 2003-Ohio-1948, 2003 WL 1894573 ...................2, 16

*State of Ohio v. Siller*, 8th Dist. No. 90865, 2009-Ohio-2874, 2009 WL 1710702 .........................6

*State of Ohio v. Zimmer*, 8th Dist. No. 75138, 1999 WL 980406 ...............................................2, 16

*State of Ohio v. Zimmer*, 8th Dist. No. 90846, 2008-Ohio-6953, 2008 WL 5423334 .................2, 6

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ................................................................ 14, 15

*Taylor v. Streicher*, 465 Fed.Appx. 414 (6th Cir. Feb. 21, 2012)...................................................14

*United States v. MacDonald*, 778 F.Supp. 1342 (E.D. N.C. 1991) ......................................... 12, 13

*United States v. Morales*, 916 F.Supp. 336 (S.D. N.Y. 1996) ......................................................11

*United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) .............................16

*Villasana v. Wilhoit*, 368 F.3d 976 (8th Cir. 2004) ..................................................................12

*Yeager v. Local Union 20, Teamsters, Chaufeurs, Warehousemen, & Helpers of America*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983) ..............................................................19

**Statutes**

42 U.S.C. § 1983 ........................................................................................................... 1, *passim*

R.C. 2305.11(A) ...............................................................................................................17

R.C. 2744.03(A)(6) ........................................................................................................1, 20

# INDEX OF EXHIBITS

**Doc. #**                    **Description of Exhibit**

23-1        Excerpts from Deposition of Tina Stewart, taken July 18, 2013

23-2        Excerpts from Deposition of Richard Bombik, taken September 17, 2013

23-3        Excerpts from Deposition of Joseph Serowik, taken October 18, 2013

23-4        1997 Forensic Laboratory Report
            (identified as Plaintiffs' Exhibit 1 at the Deposition of Tina Stewart)

23-5        Tina Stewart's Handwritten Notes
            (identified as Defendants' Exhibit C at the Deposition of Tina Stewart)

23-6        Excerpts from Deposition of Thomas Siller, taken September 23, 2013

23-7        Excerpts from Deposition of Walter Zimmer, taken September 23, 2013

23-8        Zimmer Dep. Ex. D – Motion To Require State To Have The DNA
            Testing Performed on All Suspected Blood Spots and Splatters On the
            Clothing of Jason Smith, filed on September 20, 2001, in *State of Ohio v.
            Zimmer*, CR-391411, Cuyahoga County Court of Common Pleas

23-9        Supplemental Affidavit of Edward T. Blake in Support of Motion for New
            Trial, dated March 14, 2007

23-10       Declaration of Meghan Clement, M.S., with CV and Expert Report

23-11       Declaration of Joseph Serowik

23-12       Declaration of Robert Kaplan, Ph.D., with CV

23-13       Certified Transcript of Proceedings, Vol. 2, pp. 440-461, from the 1998
            Trial in *State of Ohio v. Thomas Siller and Walter Zimmer*, Case No. CR-
            361726, Cuyahoga County Court of Common Pleas.

23-14       Certified Transcript of Proceedings, Vol. 8, pp. 2075-2119, from the 2001
            Trial in *State of Ohio v. Thomas Siller*, Case No. CR-391411, Cuyahoga
            County Court of Common Pleas.

23-15       Certified Transcript of Proceedings, Vol. 12, pp. 2711-2746, from the
            2001 Trial in *State of Ohio v. Thomas Siller*, Case No. CR-391411,
            Cuyahoga County Court of Common Pleas.

23-16          Certified Transcript of Proceedings for hearing held on March 24, 2011, in the Cuyahoga County Court of Common Pleas in *State of Ohio v. Thomas Siller*, Case Nos. CR-361726, CR-378354, and CR-391411.

23-17          Certified Transcript of Proceedings for hearing held on April 1, 2011, in the Cuyahoga County Court of Common Pleas in *State of Ohio v. Walter Zimmer*, Case Nos. CR-361726, CR-378354, and CR-391411.

24             Declaration of Det. Kathleen Carlin, City of Cleveland Police (separately filed with exhibits)

25             Complete Deposition Transcript of Tina Stewart, taken July 18, 2013, with Errata Sheet and Deposition Exhibits (Pl. Ex. 1-3 and Def. Ex. A-C)

## SUMMARY OF ARGUMENT

Plaintiffs' Complaint alleges federal constitutional claims under 42 U.S.C. § 1983 and state law tort claims against the City of Cleveland and Joseph Serowik, a former scientific examiner who was employed by the City of Cleveland Police Forensic Laboratory from 1987 to 2004. As discussed below, Serowik is entitled to qualified immunity on the federal claims because Plaintiffs cannot establish that he personally violated any of their constitutional rights. Moreover, Serowik is entitled to immunity under R.C. 2744.03(A)(6), and summary judgment on the merits of the state law claims because they were not timely filed under the applicable 1-year statute of limitations and fail to state a valid claim under Ohio law.

## STATEMENT OF THE ISSUES

1.      Whether Serowik is entitled to qualified immunity on Plaintiffs' claim that he allegedly falsified or fabricated evidence.

2.      Whether Serowik is entitled to qualified immunity on Plaintiffs' claim that he allegedly withheld exculpatory evidence from the prosecutor in violation of *Brady*.

3.      Whether Serowik is entitled to qualified immunity on Plaintiffs' malicious prosecution claim because Plaintiffs cannot show that Serowik made, influenced, or participated in the decision to prosecute, cannot demonstrate a lack of probable cause, and cannot establish that the criminal proceedings terminated in their favor.

4.      Whether Plaintiffs' state law claims for malicious prosecution and intentional infliction of emotional distress were timely filed under the applicable statute of limitations.

5.      Whether Serowik is entitled to summary judgment on Plaintiffs' emotional distress claim because Plaintiffs cannot show that they suffered a severe and debilitating injury.

6.      Whether Serowik is entitled to immunity under R.C. 2744.03(A)(6).

<u>**STATEMENT OF FACTS**</u>

This case arises from the aggravated murder, kidnapping, burglary, and robbery of an elderly, 74-year old woman, named Lucy "Alice" Zolkowski in June 1997. A summary of the investigation that led to the prosecution of Siller and Zimmer is set forth in the Declaration of Det. Kathleen Carlin, the lead detective for the City of Cleveland Police Department. (Doc. #24, Declaration of Kathleen Carlin). It is undisputed that a grand jury issued indictments against Siller and Zimmer on March 31, 1998, for aggravated attempted murder, kidnapping, aggravated burglary, aggravated robbery, and felonious assault. (Doc. #24, Carlin Decl. ¶ 45). Both Siller and Zimmer were jointly tried and convicted of all charges in June and July 1998. (*Id.* at ¶ 46). They were sentenced to serve 20 and 40 years, respectively, in prison. *See State v. Zimmer*, 8th Dist. No. 75138, 1999 WL 980406; *State v. Siller*, 8th Dist. No. 75139, 1999 WL 980405.

In 1999, Zolkowski died from her injuries. (Compl. ¶ 39). Siller and Zimmer were then indicted for aggravated murder. (*Id.*); (Carlin Decl. ¶ 48). Siller's murder trial was held in July 2001, and resulted in a conviction and sentence of 30 years in prison, which was affirmed on appeal. *See State v. Siller*, 8th Dist. No. 80219, 2003-Ohio-1948, 2003 WL 1894573, ¶ 1-2, 14. Zimmer decided to plead guilty to involuntary manslaughter and was sentenced to serve an additional 10 years in prison. *State v. Zimmer*, 8th Dist. No. 90846, 2008 WL 5423334, ¶ 11-14.

**A.      The City of Cleveland Police Forensic Laboratory's 1997 Report.**

During the investigation, the Cleveland police found fingerprints of 3 individuals in Zolkowski's house, Siller, Zimmer, and Jason Smith. (Doc. #24, Carlin Decl. ¶ 24). Smith was a crack dealer who told the police that he sold crack cocaine to Siller and Zimmer, and had taken them to the victim's house to obtain money to buy crack. (*Id.* ¶ 38-39). During the investigation, the police searched the home of Jenean Harper, and discovered 6 items of Smith's clothing,

including a pair of beige pants, that were submitted to the City's laboratory for testing. (*Id.* at ¶ 33-34). A color picture of Jason Smith's pants is attached to the Affidavit of Plaintiffs' DNA expert, Edward Blake, and it shows that there is a large stain on the back of the right knee, along with a number of smaller stains on the front and the back. (Doc. #23-9, pp. 6-7).

At that time, there were three civilian scientific examiners who performed serology testing in the City's forensic laboratory: Tina Stewart, Joseph Serowik, and Kristin Koeth. (Doc. #23-1, Deposition of Tina Stewart, pg. 19). The lab's testing, however, was limited to determining whether a clothing item was positive or negative for bodily fluids (i.e., blood or semen). (*Id.* at 35, 52, 56). The Lab did not perform any DNA analysis, as this testing was performed by the Coroner's Office. (Stewart Dep. 35, 42-43); (Bombik Dep. 98). Moreover, the lab did not perform any "blood spatter" analysis because Stewart and Serowik were not blood spatter experts. (Stewart Dep. 35, 52) (Bombik Dep. 98, 100) (Serowik Dep. 124).

With respect to the serology testing performed in the Zolkowski case, Stewart was the "lead analyst" who performed the actual laboratory tests and prepared the written forensic lab report (the "1997 Lab Report" or "Lab Report"). (#23-1, Stewart Dep. 22, 27); (#23-4, 1997 Lab Report, Pl. Ex. 1). Serowik can confirm that he was present for the testing of the clothing items because his initials were listed second on the Lab Report, after Stewart's initials. (Stewart Dep. 22, Pl. Ex. 1); (Serowik Dep. 102). Serowik did not prepare the Lab Report, however, or any of the underlying notes. (Stewart Dep. 90-91). Rather, it is undisputed that the handwriting on the lab's notes is Tina Stewart's, and that Serowik did not prepare any of the information on the Lab Report, except for adding the dates of his testimony in the bottom left corner and verifying the chain of custody on the back of the report. (Stewart Dep. 89-93); (Serowik Dep. 102, 121, 168-169); (#23-4, 1997 Lab Report, Pl. Ex. 1); (#23-5, Handwritten Notes, Stewart Dep. Ex. C).

The 1997 Lab Report is a two-sided card that lists the final results of the testing on the front, and an inventory listing of the clothing items on the back. (Stewart Dep. 29-32, 105, Pl. Ex. 1). In this case, the Laboratory's handwritten notes confirm that Stewart performed a PIT test on 6-17-97 on the large stain on the right knee of the beige pants, and preliminarily determined that it was "positive" for human blood. (Stewart Dep. 92-93, 101, Ex. C, pg. 2). Thereafter, the stain was cut out and subjected to three additional tests -- a Takayama, Species Origin, and ABO blood type test. (Stewart Dep. 93-95, Ex. C, pp. 3-4). Through the additional tests, Stewart was able to confirm that the large stain that was cut-out of the right knee was "positive" for "human blood," but that the blood type was "inconclusive." (*Id.* at 55, 94-97).

**B.       Serowik's Testimony at the 1998 Trial.**

At the first trial in June 1998, Serowik was called to testify to the contents of the 1997 Lab Report, i.e., that the beige pants, a gray T-shirt, and a house coat had tested "positive" for human blood. (Doc. #23-13, 1998 Trial Transcript, Vol. 2, pp. 442-443). As the prosecuting attorney, Richard Bombik, confirmed, Smith's pants were an exhibit at the trials, and were made available for inspection and testing by the defense. (#23-2, Bombik Dep. pg. 98). During the 1998 trial, in fact, both defense attorneys were clearly able to observe the other smaller stains on the pants because they both asked questions about the other stains during cross-examination. (Doc. #23-13, 1998 Tr. pp. 454-458). Indeed, Siller admitted that he knew during his criminal trials that there were a number of other stains on the pants, and that he wanted to obtain independent testing at that time. (Doc. #23-6, Siller Dep. 89-96). His defense attorneys decided, however, not to request any independent testing. (*Id.* at 94-95).[1]

---

[1] Zimmer also was aware of the other blood stains on Smith's pants. His attorneys in fact filed a motion on September 20, 2001, to "Require The State To Perform Additional DNA Testing On All Of The Stains On Jason Smith's Clothing." (Doc. #23-7 and #23-8, Zimmer Dep. pg. 80 and Zimmer Dep. Ex. D). This Motion was granted, but Zimmer nevertheless decided to plead guilty to a lesser offense.

### C.    Serowik's Testimony at the 2001 Trial.

Serowik also was called as a witness to testify at Siller's second trial on July 19, 2001. Once again, Serowik testified that the beige pants were positive for human blood. (Doc. #23-14, 2001 Trial Transcript, Vol. 8, pg. 2081).    Moreover, during cross-examination, the defense attorneys again asked questions about the other small stains on the pants, and whether any additional tests were performed on those other stains.    (*Id.* at 2095-98).    During this cross-examination, an issue arose about one particular stain on the left leg of the pants that was circled, but was not cut out.  (*Id.* at 2096-2097, 2105).  Serowik explained that the lab normally puts a circle around a stain if it intends to cut it out for further analysis, so he "assumed" that the preliminary PIT test of the stain was negative because it had not been cut out.  (*Id.* at 2108).  As the prosecuting attorney, Richard Bombik explained at his deposition, one of the defense counsel had the beige pants "in hand," and was pointing to the stain on the left leg and asking whether it had been tested.  (Bombik Dep. 53).  When Serowik was unable to confirm whether this stain had been tested, Bombik requested that the laboratory re-test the pants.  (*Id.* at 54).

Other than a record of the chain of custody on the back of the Lab Report (Pl. Ex. 1), there was no written report prepared for the additional testing of the beige pants that was performed by the City's laboratory during the second trial.  (#23-3, Serowik Dep. 167-171); (23-2, Bombik Dep. 86-87).  Although Bombik did not remember why a written report was not prepared, he remembered that "we were in the middle of trial," and Serowik was going to be called back to the stand in a "matter of days." (*Id.* at 87).  Indeed, Serowik was called back to the stand to testify on July 25, 2001.  (Doc. #23-15, 2001 Trial Transcript, Vol. 12, pg. 2711).  At that time, he testified that the laboratory performed a new test of the circled stain on the left leg, and determined that it was positive for blood.  (*Id.* at 2713).  The stain was then cut-out and sent

to the Coroner's office for DNA testing. (*Id.* at 2713-14). Serowik further testified that "our laboratory tested every discoloration on the back of these pants," and did not find any other stain that was positive for blood. (*Id.* at 2715). The State also re-called Andrea Fischer from Coroner's Office, and she testified that she conducted a DNA test of the stain on the left leg, and determined that it matched the DNA profile of Lucy Zolkowski. (*Id.* at 2735-37).

**D.** **The 2011 Plea Agreements of Siller and Zimmer.**

Sometime after his second trial, Siller filed a motion with the trial court to permit further DNA testing by the Innocence Project. (Compl. ¶ 68). The results of the DNA testing are attached to the Supplemental Affidavit of Dr. Edward T. Blake, dated March 14, 2007, which was filed in support of the Motion for New Trial. (Doc. #23-9). In his Affidavit, Blake stated that there were approximately 20 smaller blood stains "on the front and back" of the beige pants that were "clearly visible to the naked eye." (#23-9, Blake Supp. Aff. ¶ 3). Blake performed DNA testing on 9 of the 20 stains – 5 on the front and 4 on the back. (*Id.*) 7 of the 9 stains tested positive for Zolkowski's DNA, and 2 tested positive Smith's DNA. (Compl. ¶ 69).

Based upon the DNA test results, Siller filed a motion for a new trial in both his 1997 and 2001 cases, and Zimmer filed a motion for a new trial and a motion to withdraw his guilty plea. The trial court denied the motion for a new trial in Siller's 2001 case, but this ruling was reversed by the court of appeals, which remanded for a new trial. *See State of Ohio v. Siller*, 8th Dist. No. 90865, 2009-Ohio-2874, 2009 WL 1710702, ¶ 62. The court of appeals affirmed, however, the denial of Zimmer's motion to withdraw his guilty plea, finding that Zimmer "could not demonstrate the state committed any *Brady* violation." *Zimmer*, 2008 WL 5423334, ¶ 23-25. The prosecution was then prepared to re-try both Siller and Zimmer for all of the original charges, but they ultimately reached a "compromise" where Siller and Zimmer agreed to plead

6

guilty to "aggravated theft" and be sentenced to 12 years in prison. (Bombik Dep. 114-118). Following separate hearings that were held on March 24, 2011, and April 1, 2011, Siller and Zimmer were then released from prison for time served. (Compl. ¶ 77).

## ARGUMENT

I.   **JOSEPH SEROWIK IS ENTITLED TO QUALIFIED IMMUNITY AND SUMMARY JUDGMENT FOR PLAINTIFFS' SECTION 1983 CLAIMS.**

It is well-established that governmental officials who perform discretionary functions are entitled to qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). The Supreme Court has established a two-part test for qualified immunity. "First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. Then, if "a constitutional violation could be made out," the Court must decide "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

"To be clearly established, a right must be sufficiently clear that every 'reasonable official would [have understood] that was he is doing violates that right,'" and "can 'reasonably … anticipate when their conduct must give rise to liability for damages.'" *Riechle v. Howard*, ___ U.S. ___, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citations omitted). Indeed, as the Supreme Court recently has emphasized, "the right allegedly violated must be established, 'not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are

clear to a reasonable official." *Riechle*, 132 S.Ct. at 2094 (citations omitted). Thus, the Supreme Court has held that the "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* at 2093 (emphasis added) (citations omitted).

**A. Serowik Is Entitled To Qualified Immunity On Count 1 of the Complaint.**

**1. Plaintiffs Cannot Demonstrate that Serowik Knowingly And In Bad Faith Falsified Or Fabricated Any Evidence.**

Count One alleges that "Serowik knowingly and in bad faith submitted false and fabricated evidence that implicated Siller and Zimmer in Zokowlski's beating." *Id.* The Complaint does not identify the specific evidence that was allegedly "false and fabricated," but it is clear that this claim <u>cannot</u> be based upon Serowik's testimony at the Siller and Zimmer trials because "it is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *See Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433, 454 (6th Cir. Aug. 26, 2011). As the Sixth Circuit has held, "[a] witness is entitled to testimonial immunity 'no matter how egregious or perjurious that testimony was alleged to have been.'" *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (citations omitted). Thus, Count 1 cannot be based upon Serowik's trial testimony, but must be based upon Serowik's "non-testimonial conduct." *Id.*

Here, the only non-testimonial evidence that was prepared by the City of Cleveland's Forensic Laboratory was the 1997 Lab Report (and the underlying handwritten notes), which were both identified by Tina Stewart at her deposition. (Doc. #23-4, 1997 Lab Report, Pl. Ex. 1); (Doc. #23-5, Stewart's handwritten notes, Def. Ex. C). There is no evidence, however, to demonstrate that Serowik knowingly "falsified" or "fabricated" the Lab Report or the underlying notes. First, the undisputed evidence shows that the Lab Report and underlying notes were written by Tina Stewart, not Serowik. (Stewart Dep. pp. 89-93). While Serowik was present

during the testing, and testified about the results of the testing at the trials, he did not prepare the Lab Report itself, except for adding a few dates at the bottom of the card to reflect the dates of his testimony. (Stewart Dep. pp. 89-91). Thus, Serowik cannot be held liable for any alleged falsification of the Lab Report. *See, e.g., Durham v. McElynn*, 254 Fed.Appx. 892, 896 (3d Cir. 2007) (police forensic scientist was immune from liability because he "did not perform the DNA tests on which the report was based, but simply testified to its contents at trial").

Second, there is no evidence to demonstrate that the Lab Report (or the handwritten notes) were "falsified" or "fabricated" in any manner. As previously discussed, the 1997 Lab Report accurately reported that that the clothing item – the beige pants – tested "positive" for human blood. This statement is a true statement that was confirmed by the Coroner's DNA analysis and by the DNA testing performed by the Innocence Project. Indeed, the purpose of the City's laboratory testing was not to determine the *source* of the blood. Rather, it was limited only to determining *whether* there was blood on the item. Thus, the fact that Plaintiffs' expert later determined that other stains on the pants were attributable to Zolkowski's DNA does not change the fact that the Lab Report accurately stated that the pants tested "positive" for blood. Accordingly, Serowik is entitled to qualified immunity because Plaintiffs cannot establish that he "falsified" or "fabricated" any evidence.

> **2. Serowik Is Entitled To Qualified Immunity Because No Reasonable Official Would Have Clearly Known That He Had A Constitutional Duty To Include Additional Information In The Lab Report.**

Given that the Lab Report accurately reported that the pants had tested positive for human blood, Plaintiffs are left only with the meritless argument that the Lab Report should have included additional testing results or additional descriptions of the other stains on the pants. It is well-established, however, that "the police do not have a constitutional duty to perform any

particular tests." *Arizona v. Youngblood*, 488 U.S. 51, 59, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Indeed, as set forth in the expert report of Meghan Clement, M.S., the purpose of the forensic laboratory report is simply to report the final testing results. (#23-10, Declaration of Meghan Clement, M.S., Expert Report, pg. 2). Thus, while Plaintiffs argue that the City's forensic examiners should have tested or discussed the other stains on the pants in the final Lab Report, they cannot point to **_any_** case law that would "clearly establish" that a forensic scientist can be held personally liable for failing to test other stains or failing to discuss other stains in a lab report that merely sought to document the final testing results. Accordingly, the Court should conclude that Serowik is entitled to qualified immunity on Count 1.

**B.  Serowik Is Entitled To Qualified Immunity On Count 2 of the Complaint.**

**1.  Plaintiffs Cannot Demonstrate That Serowik Suppressed or Withheld Exculpatory Evidence From the Prosecutor In Violation of *Brady*.**

Count Two alleges that Serowik can be held liable for an alleged *Brady* violation for allegedly withholding material exculpatory evidence from the prosecutor who, in turn, withheld such evidence from Siller and Zimmer. (Compl. ¶ 114). In this regard, Paragraph 114 of the Complaint only identifies one piece of alleged "withheld" evidence (*i.e.,* Tina Stewart's handwritten notes of "spatter stains" on the front of the pants). (*Id.*) There is no other exculpatory evidence identified in the Complaint that was allegedly "withheld." (*Id.*)

This is a meritless claim. At all relevant times, the prosecuting attorney had full access to both the Lab Report and the handwritten notes, upon request. (Stewart Dep. 99); (Bombik Dep. 103) (admitting that the prosecutor had the ability to look at the laboratory's notes upon request). While the prosecutor's office normally received only a copy of the final lab report, the fact that the prosecutor and the defense did not request to inspect the laboratory's underlying notes does not mean that the notes were "withheld" or "suppressed." (Bombik Dep. 101); (Stewart Dep.

99).  Indeed, in this case, the handwritten notes were prepared by Tina Stewart, not Serowik.  It was Stewart, therefore, who would have provided the Lab Report to the investigating detective who, in turn, would have forwarded the report to the prosecutor.  (Bombik Dep. pg. 104).  Thus, there is no evidence to establish that Serowik ever "suppressed" or "withheld" any evidence from the prosecutor.

Indeed, under the applicable case law, any alleged failure to turn over Stewart's handwritten notes does not violate *Brady* because it is undisputed that the physical evidence at issue – the beige pants – were turned over to the defense for inspection and testing.  It is well-established that evidence is not "suppressed" under *Brady* if the information is available from other sources, or if the defendant was "aware of the essential facts that would enable him to take advantage of the exculpatory evidence."  *See Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004).  "If the defendant has information, but fails to use due diligence to make use of it, the defendant cannot later claim that the government 'suppressed' evidence" under *Brady*.  *See United States v. Morales*, 916 F.Supp. 336, 339 (S.D. N.Y. 1996).

Here, the fact that there were other small "spatter" stains on the front of the beige pants was information that was already known or made available to the defense because it is undisputed that they had an opportunity to observe and test the beige pants, which were introduced as an exhibit at both trials.  (Bombik Dep. 89).  Indeed, Plaintiffs' expert, Edward Blake, has stated that the small spatter stains on the pants were "clearly visible" to the naked eye.  Thus, at the trial, the existence of other stains on the pants was known by all counsel, and in fact was the subject of numerous questions by counsel at the trial.  Accordingly, no *Brady* violation could have arisen because the essential facts about the existence of other small stains on the beige pants were made available to the defense through the production of the physical evidence.

In this regard, the district court's opinion in *United States v. MacDonald*, 778 F.Supp. 1342, 1353-54 (E.D. N.C. 1991), is directly on point. In *MacDonald*, the defendant also argued that the prosecution's failure to turn over the underlying lab notes violated *Brady*. Upon review, however, the court rejected this argument, holding that the government complied with *Brady* "by allowing MacDonald to examine and test any of the actual physical evidence, including the fibers" that were the subject of the allegedly exculpatory laboratory notes. *Id.* at 1353. The same reasoning applies equally here. In this case, the beige pants were made available to the defense for inspection and testing, and there is no dispute that the defendants were aware of the fact that there were a number of small stains on the front and the back of the pants. Siller and Zimmer in fact could have exercised due diligence to conduct their own testing of the pants or to retain a blood spatter expert to analyze the stains. They did not do so. Accordingly, as in *MacDonald*, they cannot now claim any *Brady* violation.

> **2.** **Plaintiffs Cannot Show That It Was Clearly Established A Forensic Criminal Laboratory Had An Affirmative Duty Under *Brady* To Produce Their Underlying Laboratory Notes.**

Serowik also is entitled to qualified immunity for Count 2 under the second-part of the test. As previously discussed, Plaintiffs cannot point to any case law that would "clearly establish" back in 1997 and 2001 that a forensic scientist had an affirmative duty under *Brady* to produce their laboratory's worksheets and notes, particularly where, as here, the final lab report and the physical evidence has been produced. *Villasana v. Wilhoit*, 368 F.3d 976, 979-980 (8th Cir. 2004) (holding that forensic scientists could not be held liable under *Brady* for failing to disclose the documents underlying disclosed lab reports); *MacDonald*, 778 F.Supp. at 1353-54 (no *Brady* violation for failing to produce laboratory's notes because all of the physical evidence had been made available). Indeed, at the time of the Siller and Zimmer trials, the standard

practice for criminal forensic laboratories was to produce the final lab report, not the underlying notes. (*See* Doc. #23-10, Clement Decl., Expert Report, pg. 2); (Doc. #23-2, Bombik Dep. pp. 101-102). Accordingly, given this industry practice and the foregoing case law, the Court should conclude that Serowik is entitled to qualified immunity because a reasonable forensic scientist in Serowik's position would not have clearly known that he could be held personally liable for failing to produce the laboratory notes, particularly where, as here, the final lab report and the physical evidence have been produced. *MacDonald*, 778 F.Supp. at 1353-54.

In this regard, the Sixth Circuit's opinions in *Moldowan* and *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), are both distinguishable, and do not "clearly establish" that a forensic scientist has a duty under *Brady* to produce the lab's notes, where, as here, the physical evidence has been made available. As Judge Polster and Judge Gregory Frost of the Southern District of Ohio have both recently observed, *Moldowan* and *Gregory* were cases involving forensic examiners who "intentionally fabricated evidence." *See D'Ambrosio v. Marino*, No. 1:11-cv-933, 2012 U.S. Dist. LEXIS 141516, 2012 WL 4504523, at *6 (N.D. Ohio Oct. 1, 2012); *LeFever v. Ferguson*, Nos. 2:11-cv-935, 2:12-cv-664, 2013 WL 3742530, at *8-10 (S.D. Ohio July 15, 2013). Indeed, upon review of case law since *Moldowan*, both Judge Polster and Judge Frost have agreed that the Sixth Circuit has confined the *Brady*-derivative obligation only to "police officers and state-retained experts who fabricate evidence." *Id*. (citations omitted). Thus, in *D'Ambrosio* and *LeFever*, the judges granted qualified immunity to a coroner and a scientific examiner who allegedly failed to disclose exculpatory evidence under *Brady*.

## C. Serowik Is Entitled to Qualified Immunity On Count 5 Of The Complaint.

Count Five of the Complaint alleges a claim for "malicious prosecution" under federal law. In order to prevail on this claim, Plaintiffs must prove the following:

First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintff must show that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

### 1. Serowik Did Not Make, Influence, or Participate In The Decision To Prosecute Siller and Zimmer.

As the Sixth Circuit has held, "[w]hether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Id.* at 312, n. 9. Here, Serowik was not the lead detective who compiled all of the evidence and brought any of the charges against Siller and Zimmer. (#24, Carlin Decl. ¶ 2, 44-48). Indeed, it is undisputed that the final decision to prosecute Siller and Zimmer was made by the grand jury. (*Id.* at ¶ 45, 48). Serowik did not testify before the grand jury, and was not involved in any prosecutor's decisions. (Doc. #23-11, Serowik Decl. ¶ 4-5). Thus, he cannot be held personally liable for a malicious prosecution claim. *See, e.g., France v. Lucas*, No. 1:07-CV-3519, 2012 WL 5207555, at *9 (N.D. Ohio Oct. 22, 2012) (granting summary judgment because detective "did not testify before the federal grand jury" and did not "make any recommendations regarding the prosecution"); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2007); *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002); *Taylor v. Streicher*, 465 Fed.Appx. 414, 420 (6th Cir. Feb. 21, 2012).

### 2. Plaintiffs Cannot Establish A Lack Of Probable Cause.

Plaintiffs also cannot establish a lack of probable cause. As a general rule, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines

the existence of probable cause." *See Mott v. Mayer*, No. 11-3853, 11-3855, 11-3996, 2013 WL 1663219, at *7 (6th Cir. Apr. 17, 2013) (citing *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)); *Rodriguez*, 439 Fed.Appx. at 457 (following *Barnes*). Although "an exception applies 'where the indictment was obtained wrongfully by defendant police officers who knowingly presente[d] false testimony to the grand jury,'" *Mott*, 2013 WL 1663219, at *7, this limited exception is not applicable because Serowik did not testify before the grand jury. (#23-11, Serowik Decl. ¶ 5). Accordingly, under Sixth Circuit precedent, Serowik is entitled to qualified immunity on Count 5. *See Rodriguez*, 439 Fed.Appx. at 457.

In *Ayers v. City of Cleveland*, 2013 WL 775359 (N.D. Ohio Feb. 25, 2013), this Court cited *Sykes* to conclude that police officers "cannot escape liability" for malicious prosecution "by pointing to decisions of prosecutors or grand jurors or magistrates to confine or prosecute the plaintiff." *Id.* at *9. The page cited in *Sykes*, however, involved the first prong of the malicious prosecution test, not the probable cause prong. Indeed, in *Sykes*, the evidence demonstrated that the investigatory police officer influenced the decision to prosecute "by way of his knowing misstatements to the prosecutor." *Id.* Thus, *Sykes* did not overrule the "long settled" rule that "the finding of an indictment, fair on its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Rodriguez*, 439 Fed.Appx. at 457.

Indeed, since *Ayers*, the Sixth Circuit has continued to follow this long-settled rule in determining whether there is a lack of probable cause for a malicious prosecution claim. In *Mott*, which was decided on April 17, 2013, the Sixth Circuit again followed this rule, noting that the only exception is where the indictment was obtained by "defendant police officers who knowingly present[ed] false testimony to the grand jury." *Id.*, 2013 WL 1663219, at *7. Under *Mott*, *Rodriguez*, and *Barnes*, therefore, Serowik is entitled to qualified immunity on Count 5.

Finally, even if the grand jury rule did not apply, the fact remains, as set forth in the Declaration of Det. Kathleen Carlin (Doc. #24), that there was probable cause for the prosecutions of Siller and Zimmer. Probable cause is defined as a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001). Here, the original prosecutions were based upon eyewitness testimony, the inconsistent and conflicting statements of Siller and Zimmer, and other reliable and probative evidence. (Doc. #24, Carlin Decl. ¶ 3-42). The jury verdicts in fact were affirmed by the court of appeals as supported by sufficient evidence. *Siller*, 2003 WL 1894573, *Zimmer*, 1999 WL 980406, and *Siller*, 1999 WL 980405. Accordingly, the Court should conclude that Plaintiffs cannot establish a lack of probable cause.

### 3. Plaintiffs Cannot Establish The Criminal Proceedings Terminated In Their Favor.

Plaintiffs also cannot establish that the prosecution ended in their favor. It is well-established that termination of a criminal case "by reason of voluntary settlement or agreement of compromise with the accused is not indicative of guilt or innocence and, therefore, is not a termination in favor of the accused." *See Ash v. Ash*, 72 Ohio St.3d 520, 522, 651 N.E.2d 945, 948 (1995). This same rule also has been applied to federal malicious prosecution claims. *See Mechler, D.C. v. R.W. Hodges*, No. C-1-02-942, 2006 WL 2927253, at *2 (S.D. Ohio 2006).

Here, it is undisputed that the criminal proceedings were terminated based upon a voluntary settlement and agreement of compromise that resulted in guilty pleas by Siller and Zimmer for the charge of aggravated theft. While Plaintiffs allege that the aggravated theft charge was not related to actual crimes committed against Zolkowski, this argument is not material because the transcripts of the 2011 plea hearings clearly show that the pleas were the subject of "a voluntary settlement or agreement of compromise" that was intended to resolve the

original criminal charges. (Doc. #23-16 and #23-17, Hearing Transcripts of March 24, 2011, and April 1, 2011). Indeed, at his deposition, Bombik testified that the prosecution was "prepared" to go to trial on the original charges, and that the plea agreement was a "compromise." (Bombik Dep. pp. 116-118). Accordingly, Serowik is entitled to qualified immunity on Count 5.

## II.  JOSEPH SEROWIK IS ENTITLED TO SUMMARY JUDGMENT AND IMMUNITY ON PLAINTIFFS' STATE LAW CLAIMS.

### A.  Plaintiffs' State Law Tort Claims Are Barred By The Statute of Limitations.

Counts 6 and 7 allege state law tort claims for malicious prosecution and intentional infliction of emotional distress. Under Ohio law, malicious prosecution claims are subject to a one-year statute of limitations, and accrue when the criminal proceedings terminate in favor of the accused. *Jones v. Swank*, 2:11-cv-797, 2012 WL 4107981, *7 (S.D. Ohio Sept. 19, 2012) (citing R.C. 2305.11(A)); *Lee v. Lucas*, No. 1:10-cv-00151, 2011 WL 5361509, at *4 (N.D. Ohio Oct. 31, 2011). Here, Plaintiffs' Complaint alleges that the criminal proceedings terminated on March 24, 2011, and April 1, 2011. (Compl. ¶ 76-77). The Complaint was not filed, however, until March 19, 2013, almost 2 years later. Accordingly, Plaintiffs' malicious prosecution claim is barred by the applicable 1-year statute of limitations. *Jones*, 2012 WL 4107981, at *7.

Similarly, the intentional infliction of emotional distress claim was not timely filed. Under Ohio law, "[t]he statute of limitations which applies to the intentional infliction of emotional distress can vary depending on the type of action which gives rise to the claim." *See Crist v. Pugin*, No. 3:08-CV-501, 2008 WL 2571229, at *3 (N.D. Ohio June 25, 2008). "Generally, the applicable statute of limitations for a claim for intentional infliction of emotional distress is four years." *Id.* "However, when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress." *Id.*; *Lee*, 2011 WL 5361509, at *4.

Here, the Complaint alleges that the intentional infliction of emotional distress ("IIED") claim is based upon the same facts and the same injury as the malicious prosecution tort claim (wrongful prosecution and incarceration). Accordingly, as this Court held in *Ayers v. City of Cleveland*, the same, 1-year statute of limitations applies to both the malicious prosecution and the IIED claim. *Ayers*, 2013 WL 775359, at *14 (holding that IIED claim and malicious prosecution claim were subject to the same, one-year statute of limitations); *see also Lee*, 2011 WL 5361509, at *4 (dismissing malicious prosecution and IIED claims as untimely filed under applicable one-year statute of limitations).

**B.    Plaintiffs Cannot Establish The Elements Of A Malicious Prosecution Claim.**

For the same reasons discussed for Count 5, the Court also should grant summary judgment on Count 6. Under Ohio law, the tort of malicious prosecution has three elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, 871 N.E.2d 1159, ¶ 10.

Here, Plaintiffs cannot demonstrate that Serowik maliciously "instituted" the prosecution in that he did not testify before the grand jury and did not participate in any of the decisions to arrest and prosecute Siller and Zimmer. *Taylor*, 465 Fed.Appx. at 420. Similarly, Plaintiffs cannot show a lack of probable cause. Under Ohio law, a grand jury indictment creates a presumption of probable cause. *Martin v. Insight Communications Co., LP*, Case No. 2:10-cv-00537, 2011 WL 1233401, at *8, fn. 14 (S.D. Ohio 2011). "In order to overcome this presumption, the plaintiff must provide substantial evidence that the grand jury proceeding received perjured testimony or was otherwise significantly irregular." *Id.* (citing *Barstow v. Waller*, 4th Dist. No. 04CA5, 2004-Ohio-5746, 2004 WL 2427396, at *12 (Oct. 26, 2004)).

Plaintiffs cannot make this required showing.  Accordingly, Serowik is entitled to summary judgment in his favor.  *Martin*, 2011 WL 1233401, at *8.

Finally, Plaintiffs cannot establish that the criminal proceedings terminated in their favor. As previously discussed, the Ohio Supreme Court has held that a criminal case that was terminated "by reason of voluntary settlement or agreement of compromise with the accused is not indicative of guilt or innocence and, therefore, is not a termination in favor of the accused." *See Ash*, 72 Ohio St.3d at 522; *Douglas v. Swing*, No. 1:10-cv-14, 2011 WL 3497292, at *6 (S.D. Ohio Aug. 10, 2011).  Accordingly, Plaintiffs cannot prevail on either their federal or state malicious prosecution claim.

### C.  Plaintiffs Cannot Establish The Elements Of An Intentional Infliction of Emotional Distress Claim Under Ohio Law.

The tort of intentional infliction of emotional distress arises when "one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chaufeurs, Warehousemen, & Helpers of America*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666, 671 (1983)).  "Serious emotional distress may be found when the emotional injury is both severe and debilitating."  *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (1983).  In order to establish a severe and debilitating injury, Plaintiffs must present expert testimony or some other form of objective evidence to satisfy the "guarantee of genuineness."  *Barnes v. City of Toledo*, No. 3:08-CV-2090, 2010 WL 1268044, *11 (N.D. Ohio Jan. 15, 2010); *Buckman-Peirson v. Brannon*, 159 Ohio App.3d 12, 24-25, 822 N.E.2d 830, 840 (2004).  Here, Plaintiffs cannot establish that they have suffered any severe or debilitating injury. As set forth in the Declaration of Defendants' psychology expert, Robert Kaplan, both Siller and Zimmer have <u>not</u> suffered a severe and debilitating injury.  (Doc. #23-12, Declaration of Robert Kaplan, Ph.D, ¶ 5-6).  Zimmer in fact has not sought *any* psychological counseling or treatment

at all. (Zimmer Dep. pp. 84-86). Thus, they cannot prevail on any intentional infliction of emotional distress claim.

### D. Serowik Is Entitled To Immunity Under Ohio Rev. Code 2744.03(A)(6).

Under R.C 2744.03(A)(6), an employee of a political subdivision is immune from tort liability for damages unless he acted "with malicious purpose, in bad faith, or in a wanton or reckless manner.'" *See O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, at ¶ 74-75. Here, if the Court grants qualified immunity under federal law, it also should grant immunity under R.C. 2744.03(A)(6). *See Chappell v. City of Cleveland*, 585 F.3d 901, 916 fn.3 (6th Cir. 2009) (granting immunity under R.C. 2744.03(A)(6)(b) because the trial court previously determined that the officers were entitled to immunity under 42 U.S.C. § 1983).

### CONCLUSION

For these reasons, the Court should grant Defendant Serowik's Motion for Summary Judgment and enter final judgment in Serowik's favor on all claims.

Respectfully submitted,

Amanda M. Knapp (0081948)
aknapp@ralaw.com
ROETZEL & ANDRESS, LPA
1375 East Ninth Street
One Cleveland Center, Ninth Floor
Cleveland, OH 44114
Telephone: 216.623.0150

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)
sfunk@ralaw.com
ROETZEL & ANDRESS, LPA
222 S. Main St., Suite 400
Akron, Ohio 44308
Telephone: 330.376.2700
*Attorneys for Defendant Joseph Serowik*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Memorandum complies with the 20-page limitation for dispositive motions assigned to the standard track set forth in Local Rule 7.1(f), minus the table of contents, table of authorities, table of exhibits, certificate of compliance, and certificate of service.

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2013, the foregoing *Motion for Summary Judgment* was filed electronically with the Court. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)

7772624 _1  108783.0016