UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS SILLER, *et al.,*                )        CASE NO. 1:13-cv-00594
                                        )
                    Plaintiffs,         )        JUDGE JAMES GWIN
                                        )
vs.                                     )
                                        )
JOSEPH SEROWIK, *et al.,*               )
                                        )
                    Defendants          )
                                        )

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED
BY DEFENDANT CITY OF CLEVELAND**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. iii

INDEX OF EXHIBTS ....................................................................................................... V

SUMMARY OF ARGUMENT ........................................................................................... 1

ISSUES PRESENTED ........................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 2

    A. Joseph Serowik's background and training in forensic analysis ................................. 2

    B. The City of Cleveland had written policies concerning the analysis of serological evidence ................................................................................................................ 4

    C. The City of Cleveland had written policies concerning serology report writing .......... 6

    D. The Forensic Unit's Serology Section kept records of the work performed on file and was available for inspection or review upon request .................................................... 6

ARGUMENT ....................................................................................................................... 7

    A. The City of Cleveland is entitled to summary judgment as a matter of law on
    plaintiffs' federal claims because there was no underlying violation of plaintiffs'

constitutional rights, and because the City does not have a custom, policy or practice that violated plaintiffs' constitutional rights ................................................................7

   1.  Serowik did not violate plaintiffs' constitutional rights ..........................................9

   2.  The City of Cleveland did not fail to train or supervise its scientific examiners or implement adequate policies, and there is no evidence that any deficiency in training or supervision was the moving force behind the alleged violations of plaintiffs' constitutional rights or that the City ratified Serowik's conduct ..........10

   3.  The City of Cleveland did not have custom, policy, practice of fabricating exculpatory evidence; nor is there any evidence to show that a City policymaker knew or had reason to know of Serowik's potential misconduct in 1997 .............15

   4.  The City of Cleveland cannot be liable on plaintiffs' federal malicious prosecution claim because there is no evidence of a policy or custom; nor can plaintiffs establish the necessary elements of the claim ........................................16

  B.  The City of Cleveland is entitled to summary judgment on plaintiffs' state law malicious prosecution and intentional infliction of emotional distress claims because the City is immune from liability under Ohio Revised Code Chapter 2744................17

CONCLUSION....................................................................................................................20

CERTIFICATE OF COMPLIANCE ..................................................................................21

CERTIFICATE OF SERVICE ............................................................................................22

## TABLE OF AUTHORITIES

*Black v. Indiana Area Sch. Dist.,* 985 F.2d 707 (3rd Cir. 1993)......................................7

*Board of Cty. Comm'rs of Bryan Cty. V. Brown,* 520 U.S. 397 (1997)........................7, 8

*Brown v. Shaner,* 172 F.3d 927 (6th Cir. 1999)...........................................................10

*Burchett v. Kiefer,* 310 F.3d 937 (6th Cir. 2002) .........................................................7

*Cater v. City of Cleveland,* 83 Ohio St.3d 24 (1998)........................................17, 18, 19

*Celotex Corp. v. Catret,* 477 U.S. 317 (1986) ...............................................................7

*Cherrington v. Skeeter,* 344 F.3d 631 (6th Cir. 2003) .................................................7, 8

*City of Canton v. Harris,* 489 U.S. 378 (1989).............................................................7, 9

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986)........................................................9

*Doe v. Claiborne Cty. Tenn.,* 104 F.3d 495 (6th Cir. 1996) ...........................................11

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690 (6th Cir. 2006) .................10

*Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993) .........................................13

*Graham v. County of Washtenaw,* 358 F.3d 377 (6th Cir. 2004) .....................................13

*Hopson v. Daimler Chrysler Corp.,* 306 F.3d 427 (6th Cir. 2002)...................................7

*Kahlich v. City of Grosse Pointe Farms,* 120 Fed. Appx. 580 (6th Cir. 2005) ...............10

*Lewis v. City of Irvine, Kentucky,* 899 F.2d 451 (6th Cir. 1990) ................................7, 11

*Lillard v. Shelby Cty. Bd. Of Educ.,* 76 F.3d 716 (6th Cir. 1996).................................12

*Maggio v. Warren,* 11th Dist. No. 2006-T-0028, 2006 WL 3772258, 2006-Ohio-6880 ..............19

*Mann v. Helmig,* 289 Fed.Appx. 845 (6th Cir. 2008)...................................................15

*Monell v. Department of Soc. Servs. Of City of New York,* 436 U.S. 658 (1978)..............7, 9

*Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) .............................................................16

*Patton v. Wood Cty. Humane Soc.,* 15 Ohio App.3d 670 (8th Dist. 2003)......................19

iii

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986)....................................................16

*Phat's Bar & Grill, LLC v. Louisville Jefferson County Metro Government,* No. 3:10-CV-00491-JGH, 2013 WL 275542 (W.D. Ky. Jan. 24, 2013) ..............16

*Sargi v. Kent City Bd. Of Educ.,* 70 F.3d 907 (6th Cir. 1995) ....................................7, 14

*Spell v. McDaniel,* 824 F.2d 1380 (4th Cir. 1987)........................................................15

*State v. Drake,* No. 76673, 2000 WL 1679423 (8th Dist. Nov. 9, 2000) ......................15

*State v. Glass,* No. 81607, 2003 WL 549976 (8th Dist. Feb. 27, 2003) ........................15

*State v. Rognstad,* No. 65019, 1994 WL 86205 (8th Dist. March 17, 1994)..................15

*State v. Wilson,* No. 55459, 1989 WL 59250 (8th Dist. June 1, 1989).........................15

*Sykes v. Anderson,* 625 F.3d 294, 308-09 (6th Cir. 2010) ...........................................17

*Thomas v. City of Chattanooga,* 398 F.3d 426 (6th Cir. 2005) ....................................14

*Walker v. City of New York,* 974 F.2d 293 (2nd Cir. 1992) ..........................................11

*Wilson v. Stark Cty. Dept. Human Serv.,* 70 Ohio St.3d 450 (1994) .............................19

**Federal Statutes and Regulations**

42 U.S.C. § 1983............................................................................................... passim

**Ohio Statutes and Regulations**

O.R.C. § 2744.01(C)(2)(a)..............................................................................18

O.R.C. § 2744.01(F) ........................................................................................18

O.R.C. § 2744.02 .............................................................................................19

O.R.C. § 2744.02(A)(1)....................................................................................18

O.R.C. § 2744.02(B).........................................................................................18

O.R.C. § 2744.02(B)(1)-(5)..............................................................................19

O.R.C. § 2744.03 .............................................................................................19

iv

## INDEX OF EXHIBITS

| Doc # | Description of Exhibit |
|---|---|
| 26-2 (Ex. A) | Relevant Portions of Joseph Serowik's Deposition Testimony |
| 26-3 (Ex B) | Declaration of Tina Wolff Stewart |
| 26-4 (Ex. B1) | Serology Policy and Procedures Manual (Part 1 of 2) |
| 26-5 (Ex. B1) | Serology Policy and Procedures Manual (Part 2 of 2) |
| 26 (Ex. B2) | Excerpted portions of 1996 Serology Protocol |
| 26-7 (Ex. B3) | Excerpted portion of the 1993 Serology Report Writing |
| 26-8 (Ex. B4) | Zolkowski case notes and worksheets |
| 26-9 (Ex. C) | Spaulding Report dated 10/21/2013 |
| 26-10 (Ex. D) | Declaration of Edward Tomba |

## SUMMARY OF ARGUMENT

Plaintiffs' federal claims under 42 U.S.C. § 1983 and state law claims against the City of Cleveland ("City") should be dismissed as a matter of law.  As discussed below, the City is entitled to summary judgment on the § 1983 claims because there was no underlying constitutional violation committed by Joseph Serowik and because plaintiffs cannot establish a City policy, practice, or custom that allegedly caused their injuries.  In addition, the City is entitled to statutory immunity on plaintiffs' state law claims because Ohio law does not recognize intentional torts as one of the limited exceptions to a municipality's grant of immunity under Ohio Revised Code Chapter 2744.  Summary judgment is further warranted on the state law claims because they are barred by the applicable statute of limitations and because plaintiff cannot establish the necessary elements of each claim.

## ISSUES PRESENTED

A.      Whether the City can be held liable under 42 U.S.C. § 1983 when there was no underlying constitutional violation committed by one of its employees.

B.      Whether the City can be held liable for failure to train when the City had policies and procedures concerning the testing of serological evidence and reporting of those findings; when additional training would not have prevented the injury from occurring, and when there is no evidence that the City ignored complaints of past misconduct.

C.       Whether the City can be held liable for failure to supervise when Serowik's immediate supervisor was City policymaker, and when the City had no reason to believe that an individual with a Master's degree lacked the experience and proficiency to perform serological testing.

1

D.      Whether the City can be held liable for ratification when it did not have any knowledge of Serowik's potential misconduct prior to or at the time of the original testing in the Lucy Zolkowski case in 1997.

E.      Whether an alleged policy, practice, custom of failing to keep forensic data is sufficient to impose liability on the City when there is no evidence that such policy caused the injury to plaintiffs, and where there is no evidence that the City ignored past complaints of Serowik fabricating and/or withholding evidence.

F.      Whether the City is entitled statutory immunity when there is no exception to immunity for the intentional tort claims of malicious prosecution and intentional infliction of emotional distress.

## STATEMENT OF FACTS

The City adopts by reference the statement of facts presented by Defendant Joseph Serowik ("Serowik") in his separately filed motion for summary judgment.  The City incorporates those facts here for the purpose of completion only and not for the purpose of ruling on its motion for summary judgment.  The details of the underlying incident are not material to plaintiffs' claims against the City.  In addition, the City of Cleveland offers the following additional facts.

**A.      Joseph Serowik's background and training in forensic analysis.**

Serowik was hired by the City of Cleveland Police Department in 1987 as a Scientific Examiner.  (Deposition of Joseph Serowik, at p. 8 (relevant portions attached as Ex. A.))  Prior to joining the police department, Serowik received a Bachelor of Science degree from LeMoyne College located in Syracuse, New York.  (Id., at p. 7).  After graduating from LeMoyne College, Serowik continued his postgraduate education at George Washington University in Washington

2

D.C.  (Id.)  Serowik eventually received a Master of Science degree in the field of forensic science for George Washington University.  (Id.)  Serowik's Masters of Science degree included a course of study in serology analysis.  (Id.)  Serowik also received serology training in conjunction with his Master of Science degree.  (Id., at p. 8.)

While employed with the police department, Serowik was a member of the American Academy of Forensic Scientists and the Midwestern Association of Forensic Scientists.  (Id., at p. 183.)  As a member those professional associations, Serowik would attend various conferences and trainings hosted by those organizations.  (Id.)  While the conferences would typically cover different topics, Serowik focused his attendance on topics concerning DNA analysis and forensic serology.  (Id., at p. 184.)  The seminars would cover the latest advancements and trends in forensic serology and would aid Serowik's professional development as a forensic serologist. (Id.)  Serowik would use the knowledge and skills he learned at these conferences in his day-to-day work in the police department's forensic lab.  (Id.)  Serowik's superiors would encourage him to attend these conferences and the police department would often pay for Serowik to attend these conferences.  (Id., at pp. 184-185)

Serowik also worked part-time for a private laboratory by the name of Tri-State Laboratories located in Youngstown, Ohio.  (Id., at pp. 49, 51.)  Serowik would work on serology cases and analyze blood and semen in criminal cases, as well as private cases.  (Id., at p. 50.)  Serowik would testify in court in connection with the cases that he worked on while employed at Tri-State Laboratories.  (Id., at p. 51.).

**B.      The City of Cleveland had written policies concerning the analysis of serological evidence.**[1]

When the original serological testing was performed in the Zolkowski case by the police department forensic lab in 1997, the City had in place written policies concerning the analysis of serological evidence.  (Protocol for the Analysis of Serological Evidence dated February 8, 1996 at p. 1, attached as Ex. 2 to the Declaration of Tina Wolff Stewart (attached as Ex. B.)  The purpose of the serology section was to analyze all physical evidence.  (Id.)  The procedures outlined in the protocol were to ensure, among other things, that all results of analyses were accurate and consistent and the integrity and value of handled evidence was maintained.  (Id.)

Under the 1996 protocol, all physical evidence brought to the forensic lab was required to be inspected prior to acceptance by lab personnel and tagged with a unique laboratory number.  (Id.)  The unique laboratory number assigned to the piece of physical evidence was placed on the corresponding lab report card.  (Id.)  Because the forensic lab handled different pieces of evidence, the protocol outlined the proper ways to handle the various kinds physical evidence.  (Id.)

With respect to physical evidence other than rape kits, lab personnel were required to verify that the number on the lab report card coincided with the number on the physical evidence before beginning any testing.  (Id.)  Prior to testing, lab personnel were required to prepare a worksheet, which was marked with, among other things, lab number; name of owner of the property; date; and initials of the analysts.  (Id., at p. 2.)  The evidence was ready for opening and analysis after completion of those preliminary steps.  (Id.)

---

[1] A complete copy of the Cleveland Police Forensic Unit policies and procedures manual is attached as Ex. 1 to the Declaration of Tina Wolfe Stewart.  Relevant portions of the manual have been excerpted for ease of reference and have been attached to Stewart's Declaration as additional exhibits as noted in the City's Memorandum.

Analysts were required to note each piece of evidence with description on the lined worksheet.  (Id.)  The 1996 protocol also required the analyst to visually analyze each piece of evidence noting any possible body fluid stains, any rips or tears, any hairs/fibers, or any other type of trace evidence.  (Id.)  The protocol suggested that the analyst use a high intensity light source to aid in the analysis.  (Id.)  If a suspected body fluid stain was observed on a piece of evidence, the protocol instructed the analyst to follow the analysis procedures found later in the protocol.  (Id.)

If a preliminary test was positive for a body fluid stain, the protocol required the analyst to circle the suspected body fluid stain with an ink marker and then cut it out for further testing.  (Id.)  The cut-out stain was then placed in a coin enveloped that was labeled with the lab report number, stain number, type of evidence from which was removed (i.e. shirt, pants, etc.), date, and the analyst's initials.  (Id.)   Analysts were to note whether the stain needed to be further analyzed.  (Id.)  The protocol called for the cut-out area of the evidence to be labeled with a stain number.  (Id.)

As mentioned, the 1996 protocol outlined procedures to be used for the testing of stains for the presence of, among other things, blood.  A blood stain could be initially identified by the appearance of a red/brown color.  (Id., at p. 7).  If an analyst suspected a stain to be blood, he or she would first use a Phenolphthalein Indicator Test (PIT).  (Id.)  If the PIT was positive, the analyst would then perform a Takyama crystal test.  (Id.)  A stain could only be reported as blood if there was a positive Takyama crystal test.  (Id.)  Except for certain cases, the analyst would then test the blood stain for species origin using the SO test.  (Id.)  If the blood was found to be human, A/B analysis would be used to determine ABO type.  (Id.)

5

**C.    The City of Cleveland had written policies concerning serology report writing.**

During the relevant time period, the City also had in place written policies concerning serology report writing.  (Serology Report Writing dated February 26, 1993, attached as Ex. 3 to Stewart Declaration.)   This section instructed analysts on how to document their finds on the laboratory report card.  For example, a piece of evidence that contained no stains was marked as "Negative for Semen and Blood."  (Id., at p. 1.)  If a stain was found on piece of evidence but was negative for AP and/or PIT, the analyst would note the piece of evidence on the lab report card and report that the evidence was "Negative for Semen and Blood."  Conversely, if a stain on a piece of evidence tested positive for PIT, Takyama, but not SO; in that scenario the analyst would note the evidence on the lab report card and report that the stain was "Positive for Blood." (Id.)  Another example used in this section concerned a piece of evidence that was positive for PIT, Takyama, and SO; the analyst would note the piece of evidence and report that it was "Positive for Human Blood."  (Id.).

**D.    The Forensic Unit's Serology Section kept records of the work performed on file and was available for inspection or review upon request.**

Upon completion of an analysts' testing, the laboratory report card, notes, and worksheets would be filed away in chronological order according to the unique laboratory report number originally assigned at the onset of the testing and would be available if additional testing was needed, if the work needed to be reviewed, inspected, or made available to the prosecutor assigned to the case.  (Stewart Declaration, at ¶7.)  This was the practice of the serology section in 1997.  (Id.)  In fact, the specific notes and worksheets for the Zolkowski case were kept on file and maintained by the Forensic Unit.  (A copy of the notes and worksheets are attached as Ex. 4 to the Stewart Declaration.)

## ARGUMENT

A court must grant summary judgment where there remain no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law and it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the party opposing the motion, that conclusion is adverse to that party. *Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. 2002); *Hopson v. DaimlerChrysler Corp.* 306 F.3d 427, 432 (6th Cir. 2002). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate here because there are no genuine issues of material fact and the City is entitled to judgment as a matter of law on all claims.

**A.** **The City of Cleveland is entitled to summary judgment as a matter of law on plaintiffs' federal claims because there was no underlying violation of plaintiffs' constitutional rights, and because the City does not have a custom, policy, or practice that violated plaintiffs' constitutional rights.**

Plaintiffs bear the burden of proving that the City of Cleveland "itself" caused the constitutional violation. A municipality cannot be held liable for the unconstitutional actions of its employees under a theory of *respondeat superior*. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (citing *Monell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658 (1978)). Instead, a plaintiff seeking to establish municipal liability under § 1983 must "identify conduct properly attributable to the municipality itself." *Cherrington v. Skeeter,* 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 404 (1997)).

Second, plaintiffs "must show that the municipal action was taken with the requisite degree of culpability." *Id.* "A showing of deliberate indifference requires a showing of

something more culpable … than a negligent failure to recognize [a] high risk of harm." *Sargi v. Kent City Bd. of Educ.,* 70 F.3d 907, 912 (6th Cir. 1995) (quoting *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712-12 (3rd Cir. 1993) (internal citations omitted)).  See also, *Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 455 (6th Cir. 1990)  (It does not suffice "to prove that an injury or accident could have been avoided if [the employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").  Finally, plaintiffs "must demonstrate a direct causal link between the municipal action and the deprivation of constitutional rights."  *Cherrington*, 344 F.3d at 645 (quoting *Board of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 404).  Plaintiff must demonstrate that, through the City's deliberate conduct, the unconstitutional conduct of the City itself was the moving force behind the injury alleged.  *Id.*

Plaintiffs' theory under Count Three of their Complaint is that the City of Cleveland should be held liable for the alleged violation of their rights because the City failed to adequately train and supervise the scientific examiners in the forensic lab, which in turn allegedly caused Serowik to fabricate and/or withhold exculpatory evidence.  (ECF Doc. 1, Complaint, at ¶118.) Plaintiffs also contend in Count Three that the City knew that Serowik lacked experience and proficiency but did nothing to ensure any meaningful training and supervision and that Serowik's supervisor's lack of scientific expertise contributed to Serowik's allegedly false fabrications. (Id., at ¶¶119-121.)   Finally, plaintiffs contend that the City knew of Serowik's alleged misconduct as early as 2001 but that the City took no further action to investigate or discipline him until 2004, which amounts to ratification.  (Id., at ¶122.)

With respect to Count Four of the Complaint, plaintiffs' theory of the City's liability is based on the City allegedly having a policy, practice, or custom of fabricating and/or withholding exculpatory evidence; failure to keep original forensic data in a litany of cases; and by signing

off on Serowik's allegedly false reports.  (Id., at ¶¶125-127).  With respect Count Five, plaintiffs allege a § 1983 malicious prosecution claim.  As will be discussed in detail below, there is no support in fact or law for these allegations and Counts Three, Four, and Five should be dismissed with prejudice as a matter of law.

> **1.      Serowik did not violate plaintiffs' constitutional rights.**

Plaintiffs' 42 U.S.C. § 1983 *Monell* claims against the City fail as a matter of law because there was no underlying constitutional violation by Serowik.  As more fully discussed in Serowik's motion for summary judgment, which the City incorporates by reference, plaintiffs cannot demonstrate that Serowik knowingly and in bad faith falsified or fabricated any evidence; suppressed or withheld exculpatory evidence from the prosecutor in violation of *Brady*; or that Serowik violated clearly established constitutional rights.  Without a constitutional violation, a court cannot impose liability upon a municipality under § 1983.  *City of Los Angeles v. Heller,* 475 U.S. 796 (1986) (*per curium*).

In *Heller*, the United States Supreme Court held that a municipal entity cannot be liable on a § 1983 cause of action where there was no underlying constitutional violation by the individual officer.  As the Court noted, "[i]f a plaintiff has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.  *Id.,* at 799. Because Serowik did not violate plaintiffs' constitutional rights, it follows that no policy of the City of Cleveland could have caused any violation of plaintiffs' constitutional rights.

2.    **The City of Cleveland did not fail to train or supervise its scientific examiners or implement adequate policies, and there is no evidence that any deficiency in training or supervision was the moving force behind the alleged violations of plaintiffs' constitutional rights or that the City ratified Serowik's conduct.**

In order to impose § 1983 liability under a failure to train standard, plaintiffs must show deliberately indifferent training on the City's part.  "The inadequacy of training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton*, 489 U.S. at 388.  To succeed on a failure to train claim, the Sixth Circuit requires a plaintiff to prove: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."  *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006).   In order to make this showing, a plaintiff must "do more than point to something the city could have done to prevent the unfortunate incident."  *Kahlich v. City of Grosse Pointe Farms,* 120 Fed. Appx. 580, 585 (6th Cir. 2005) (citations omitted).

In addition, a plaintiff establishes "deliberate indifference" by showing either (1) a failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction or (2) a failure to act in response to repeated complaints of constitutional violations by its employees.  See e.g., *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999); *Ellis ex rel. Pendergrass,* 455 F.3d at 700-01.

Plaintiffs' failure to train claim fails because they cannot demonstrate that the City's policies are inadequate.  Here, the City had written policies and procedures in place detailing how scientific examiners where to undertake their job responsibilities and how to document their findings on the laboratory report card.  Plaintiffs may counter that Robert Spalding's report dated

10

October 21, 2013 creates an issue of fact with respect to the adequacy of the City's written policies.

Upon closer examination, however, Spaulding opined with respect to the tests performed by the scientific examiners: "While it is true that the simplicity of these tests leave little opportunity for error, proper scientific protocols dictate more complete testing procedures and a more complete recording of test data, observations, and performance controls."  (Spaulding Report dated October 21, 2013, attached as Ex. C.)  In that regard, Spaulding's report criticizes the techniques used in the Forensic Lab and points to something that the City could have done (i.e. institute more rigorous procedures) to prevent the incident from occurring.  Deliberate indifference, however, "does not mean a collection of sloppy or even reckless oversights."  *Doe v. Claiborne Cty., Tenn.*, 104 F.3d 495, 508 (6th Cir. 1996).  It does not suffice "to prove that an injury or accident could have been avoided if [the employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."  *Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 455 (6th Cir. 1990).

In addition, plaintiffs' cannot demonstrate deliberately indifferent training on the part of the City.  The crux of plaintiffs' failure to train claim is that the alleged lack of adequate training allowed Serowik to fabricate and/or withhold exculpatory evidence.  This argument is meritless.  Without training, it is obvious that fabricating evidence to be used in the prosecution of an innocent individual is wrong.  One fails to see how training would make this anymore manifest because training hardly seems necessary to Serowik and other scientific examiners to have known that such actions are inappropriate.  See, *Walker v. City of New York,* 974 F.2d 293, 299-300 (2nd Cir. 1992) (finding no deliberate indifference in failing to train police officers not to commit perjury or aid in the prosecution of the innocent).

11

Furthermore, plaintiffs cannot demonstrate that the City failed to act in response to repeated complaints of constitutional violations by its employees.  Even if one were to assume that Serowik fabricated and/or withheld exculpatory evidence, there is no evidence that the City knew or should have known of Serowik's misconduct prior to and at the time of the testing done in the Zolkowski case in 1997.

In addition, the City had no reason to believe that Serowik lacked the expertise and proficiency to work as scientific examiner.  At the time of his employment with the City, Serowik held a Bachelor of Science degree and a Master of Science degree in the field of forensic science.  Serowik's master's course work included serology analysis.  Serowik also receive training in serology analysis while completing his degree.

Moreover, the City encouraged and often times paid for Serowik to attend conferences and trainings held by the various professional associations that he belonged to.  Serowik testified that these conferences and trainings would generally go over different topics related to the field of forensic analysis and that he paid particular attention to the topics that addressed serology analysis.  These conferences aided Serowik's work with the City's Forensic Unit.

Lastly, the City had no reason to believe that Serowik lacked the training or proficiency to perform serology analysis when he was also employed by a private laboratory to do the same type of work that he was responsible for doing at the City.  Given this background, it was entirely reasonable for the City to assume that Serowik was capable of performing routine serological analysis.

Plaintiffs cannot support their claim that the City is liable because it failed to supervise Serowik.  To state a claim under § 1983 for failure to supervise, plaintiffs must establish "that the supervisor encouraged the specific incident of misconduct or in some other way directly

12

participated in it." *Lillard v. Shelby Cty. Bd. Of Educ.*, 76 F.3d 716, 727 (6th Cir. 1996).  Again, even if one where to assume that Serowik fabricated and/or withheld exculpatory evidence, there is no evidence that Serowik's supervisor, Victor Kovacic, encouraged or directly participated in any unconstitutional conduct.

Even if there were evidence of Kovacic's involvement, it would not result in liability for the City.  A municipality may be held liable for an official's unconstitutional actions only if that official is the person who has the "final authority to establish municipal policy with respect to the action ordered."  *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir. 1993).  "Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials."  *Id.*

As the Superintendent, Kovacic was responsible for the day-to-day operations of the Forensic Unit.  (Tomba Declaration, at ¶2), Although Kovacic held a supervisory position; he did not have final authority to establish municipal policy with respect to the lab.  In 1997 and in 2001, Kovacic reported directly to the Commander of the Bureau of Special Investigations.  (Id., at ¶¶2-3.)  The Commander in turn reported directly to the Deputy Chief of Special Operations.  The Deputy Chief reported directly to the Chief of Police, and the Chief reported directly to the City's Director of Public Safety.  (Id., at ¶3.)  Indeed, as the Sixth Circuit has recognized, under the City Charter of Cleveland, the police department's final policymaker for purposes of § 1983 is the Director of Public Safety.  *Id.* (holding that chief of police did not have authority to make final policy regarding drug testing of police officers so as to render the City liable for purposes of § 1983).  Again, there is no evidence that Kovacic had final and unreviewable authority as Superintendant.

Plaintiffs may argue that there are issues of fact concerning the adequacy of the supervision because Serowik was not supervised by anyone with a scientific background.  The City was not deliberately indifferent in assuming that a scientific examiner with a master's degree in forensic science was adequately trained to perform serological analysis without direct supervision by a scientist.  See e.g., *Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (recognizing that it is not unconstitutional for a county to rely upon the judgments of licensed practical nurses).  Nor was the City deliberately indifferent for believing—in the absence of any complaints concerning Serowik prior to 1997—that such an individual would not accurately report his findings.  See e.g., *Sargi,* 70 F.3d at 912 (holding that school district was not deliberately indifferent to need for school bus drivers to have training on handling student medical emergencies where there was no prior notice that students were harmed by the drivers' absence of training).

Furthermore, plaintiffs' ratification theory of liability also fails.  As noted, there is no evidence that the City was aware of misconduct committed by Serowik or other lab personnel prior to 1997.   In addition, plaintiffs cannot establish that the City was deliberately indifferent simply because it did not begin an immediate investigation of Blake's report in 2001.  Given the lack of prior complaints, it was reasonable for the City to conclude that any discrepancies with Serowik's work in Green case was an isolated incident.  One isolated incident cannot be the basis for a pattern or policy claim.  *Thomas v. City of Chattanooga,* 398 F.3d 426, 430-31 (6th Cir. 2005) (holding a policy or custom cannot be established based on a single incident of potential misconduct of a city employee).  When it came to light that Serowik's alleged misconduct was more severe, the City took immediate steps by placing him on administrative leave and

14

ultimately terminating his employment as Scientific Examiner with the police department.

(Tomba Declaration, at ¶4.)

> **3.    The City of Cleveland did not have custom, policy, practice of fabricating exculpatory evidence; nor is there any evidence to show that a City policymaker knew or had reason to know of Serowik's potential misconduct in 1997.**

Plaintiffs' custom, policy and practice of fabricating exculpatory evidence claim also fails as a matter of law.  First, plaintiffs contend that Serowik's alleged misconduct was widespread and systematic.  Presumably, plaintiffs arrive at this conclusion based on the Spaulding Audit that took issue with some of the cases in which Serowik was involved.   The audit, however, was not completed until 2005; well after the initial testing in 1997 and subsequent testing in 2001.   The audit is not probative of whether or not the City was aware that Serowik's misconduct was widespread.  In fact, without the audit, the City would have no way of knowing the depths of the issue because the City had no reason to question Serowik's objectivity as demonstrated by a number of cases where Serowik testified and found nothing of use to the prosecution.[2]

In addition, plaintiff's contention that the City had a policy, practice, or custom of failing to keep the original data in a litany of cases is meritless.  It was the practice of the Forensic Unit in 1997 to not only keep the laboratory report on file, but also the analyst notes and worksheets

---

[2] See e.g. *State v. Wilson*, No. 55459, 1989 WL 59250, at *1 (8th Dist. June 1, 1989) (early-1988 rape trial where Serowik testified that clothing revealed no presence of semen or blood and that hair found in the victim's pubic region was inconsistent with the defendant's hair); *State v. Rognstad*, No. 65019, 1994 WL 86205, at *3 (8th Dist. March 17, 1994) (testimony that rape victim's clothing and items in rape kit tested negative for semen, blood, and spermatozoa); *State v. Drake*, No. 76673, 2000 WL 1679423, at *3 (8th Dist. Nov. 9, 2000) (testimony that clothing and other physical evidence were negative for semen, blood, or spermatozoa in case concerning the alleged rape of a fourteen- year-old girl); *State v. Glass*, No. 81607, 2003 WL 549976, at *2 (8th Dist. Feb. 27, 2003) (case concerning alleged rape of a seven-year-old girl where Serowik testified that the child's pajamas were negative for semen and blood).

15

as well.  In fact, the notes and worksheets pertaining to the Zolkowski case were maintained by the Forensic Unit and available for inspection upon request.  Even if one were to assume that such a pattern, practice, or custom existed, the fact that the notes were kept on file and exist this very day negates the direct causal link between the pattern, practice, and custom and the alleged injury.  See, *Mann v. Helmig,* 289 Fed.Appx. 845, 850 (6th Cir. 2008) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1388 (4th Cir.1987)) ("[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact.").

Furthermore, plaintiffs cannot establish that the City has a policy, practice, or custom of fabricating and/or withholding exculpatory evidence.  First, plaintiffs cannot point to a general police order or other written policy encouraging such behavior by City employees.  In addition to showing an official policy promulgated by a municipality, a plaintiff may show a pervasive custom or practice of which lawmakers either knew or reasonably should have known. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985).  A plaintiff can also establish the requisite policy or custom for purposes of § 1983 by demonstrating that an official with policymaking authority has taken a single act relating to the subject matter or area at issue.  *Pembaur v. City of Cinncinnati,* 475 U.S. 469, 480-81 (1986)).   As previously noted, there is no evidence that any City policymaker was aware of Serowik's potential misconduct or the potential misconduct of any other lab employee prior to original testing in the Zolkowski case being performed in 1997.

**4.     The City of Cleveland cannot be liable on plaintiffs' federal malicious prosecution claim because there is no evidence of a policy or custom; nor can plaintiffs establish the necessary elements of the claim.**

A federal malicious prosecution claim brought against a municipality is decided under the analytical framework set forth in *Monell*.  In other words, plaintiff must point to a City policy or custom that caused the injury—malicious prosecution.  See generally, *Phat's Bar & Grill, LLC v. Louisville Jefferson County Metro Government,* No. 3:10–CV–00491–JGH, 2013 WL 275542, *2 (W.D. Ky. Jan. 24, 2103).  To prove a federal malicious prosecution claim, a plaintiff

> Must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson,* 625 F.3d 294, 308–09 (6th Cir. 2010) (internal citations and quotations omitted).

In the present matter, plaintiffs allege policies and customs predicated on theories of failure to train and fabricating and/or withholding exculpatory evidence.  As discussed above, plaintiffs cannot present evidence of such policies or customs.  It follows then that no policy or custom of the City of Cleveland could have caused plaintiffs' malicious prosecution.

Even if the Court where to determine that such policies existed, plaintiffs would still fail as a matter of law.  As more fully explained in Serowik's motion for summary judgment, which the City incorporates by reference, plaintiffs cannot establish the lack of probable cause or that the criminal proceedings terminated in their favor.

**B.     The City of Cleveland is entitled to summary judgment on plaintiffs' state law malicious prosecution and intentional infliction of emotional distress claims because the City is immune from liability under Ohio Revised Code Chapter 2744.**

Plaintiffs' Complaint alleges state law claims of malicious prosecution claim and intentional infliction of emotional distress against the City.  Both claims, however, fail as a

matter of law because the City, like all Ohio political subdivisions, is generally immune from tort liability under the Political Subdivision Tort Liability Act, codified in Ohio Revised Code Chapter 2744.  As such, the Court should dismiss those claims with prejudice.

The analysis for applying the Political Subdivision Tort Liability Act is provided by *Cater v. City of Cleveland,* 83 Ohio St.3d 24 (1998).  In *Cater,* the Ohio Supreme Court indicated that a three-tier analysis should be used to evaluate the immunity given to a political subdivision.  In the first tier, R.C. §2744.02(A)(1) grants general immunity to political subdivisions for damages for personal injury or death of a person, stating as follows:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions.  Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Revised Code § 2744.02(A)(1).  It is beyond question that the "City of Cleveland" is a political subdivision within the meaning of the statute and that its officers are either engaged in a governmental or proprietary function.  Ohio Revised Code § 2744.01 (F) ("Political subdivision" … means a municipal corporation … responsible for governmental activities in a geographic area smaller than that of the state.").  Furthermore, the definition of a "governmental function" includes "[t]he provision or non-provision of police … services or protection."  Ohio Revised Code § 2744.01(C)(2)(a).  There is no dispute that the underlying allegations in the Complaint concern the provision of non-provision of police services.   Under the first tier of the analysis, the City is afforded the blanket immunity provided by Ohio Revised Code § 2744.02

The second tier of analysis is whether any of the five enumerated exceptions to the blanket immunity granted in Ohio Revised Code § 2744.02(B) apply to the facts of this case. *Cater*, 83 Ohio St.3d at 615.  These exceptions apply to (1) the negligent operation of any motor

18

vehicle by an employee; (2) the negligent performance of acts by an employee with respect to proprietary functions of the political subdivision; (3) the negligent failure to maintain public roads; (4) the negligence of an employee occurring within the grounds of, and is due to physical defects within the grounds of, buildings that are used in connection with the performance of a governmental function; and (5) when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code. Ohio Revised Code § 2744.02(B)(1)-(5). Here, none of the five limited exceptions to immunity apply to the facts of the case and the City retains its statutory immunity from plaintiffs' malicious prosecution claim and intentional infliction of emotional distress claim. See e.g., *Wilson v. Stark Cty. Dept. Human Serv.*, 70 Ohio St.3d 450, 452 (1994) ("There are no exceptions to [political subdivision immunity] for the intentional tort[] of … intentional infliction of emotional distress …."); *Patton v. Wood Cty. Humane Soc.,* 15 Ohio App.3d 670, 682 (8th Dist. 2003) (holding that a government entity was entitled to statutory immunity from a malicious prosecution claim). See also, *Maggio v. Warren,* 11th Dist. No. 2006-T-0028, 2006 WL 3772258, 2006-Ohio-6880, ¶¶39-40 (finding that the express terms of R.C. 2744 does not provide for an exception for intentional tort claims and that a plaintiff must cite the statutory authority imposing liability).

Under the third tier of analysis, immunity that is lost because of an exception in R.C. §2744.02 may be reinstated if the political subdivision demonstrates one of the five defenses contained in R.C. §2744.03 apply. *Cater*, 83 Ohio St.3d at 615. There is no need to address this tier of the analysis any further because none of the exceptions to immunity apply in this case. Accordingly, the City is entitled to summary judgment because the City is immune from liability from plaintiffs' state law claims.

Assuming that the City is not entitled to statutory immunity from plaintiffs' malicious prosecution and intentional infliction of emotional claims, which they are, plaintiffs' claims would still fail as a matter of law against the City.  As more fully discussed in Serowik's Motion for summary judgment, which the City incorporates by reference, plaintiffs' malicious prosecution and intentional infliction of emotion distress claims fail as a matter of law because both claims are barred under the applicable statute of limitations and because plaintiffs cannot establish the elements of each claim.

## IV.  CONCLUSION

For the reasons stated above, Defendant City of Cleveland respectfully requests that the Court grant its motion for summary judgment and dismiss plaintiffs' Complaint with prejudice.

Respectfully submitted

BARBARA A. LANGHERNY
Director of Law


By:     *s/ Alejandro V. Cortes*
        SHAWN M. MALLAMAD (0011398)
        Assistant Director of Law
        ALEJANDRO V. CORTES (0079806)
        Assistant Director of Law
        City of Cleveland Department of Law
        601 Lakeside Avenue, Room 106
        Cleveland, Ohio 44114-1077
        Tel: (216) 664-2800   Fax: (216) 664-2663
        Email: SMallamad@city.cleveland.oh.us
               ACortes@city.cleveland.oh.us

        *Attorneys for Defendant City of Cleveland*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum complies with the 20-page limitation for dispositive motions assigned to the standard track set forth in Local Rule 7.1(f), minus the table of contents, table of authorities, table of exhibits, certificate of compliance, and certificate of service.

<div style="margin-left: 40%;">

*s/ Alejandro V. Cortes*
ALEJANDRO V. CORTES (0079806)
Assistant Director of Law

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2013, the foregoing **Memorandum in Support of the Motion for Summary Judgment filed by the Defendant City of Cleveland** was filed electronically with the Court. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_s/ Alejandro V. Cortes_____
ALEJANDRO V. CORTES (0079806)
Assistant Director of Law